IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ERIK J. VICARIO, | ) | Case No. 1:20-cv-1344 |
| | ) | |
| Petitioner, | ) | JUDGE DAVID A. RUIZ |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| DOUGLAS FENDER, WARDEN, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

On May 10, 2015, Tunisha Jackson got into a verbal altercation with Tanazha Watson, which escalated into a brawl involving Watson's sister, Dazhanae Dowell.  The fighting stopped when police arrived.  And Jackson returned to her apartment complex, where the tenants were having a Mother's Day get-together.  But the peace did not last.  Erik Vicario, Dowell's boyfriend, was upset at what had transpired and wanted to exact revenge.  Vicario went to the apartment complex with a gun and opened fire, wounding Jackson and her boyfriend, Tyshaun Jenkins.  Bullets also struck get-together attendees Awilda Carroll, Ronald Derrett, and Michael Matthews, who died of his wounds.  Following a jury trial, Vicario was found guilty of aggravated murder, murder, attempted murder, felonious assault, and having weapons while under disability and sentenced to 31 years to life.

Vicario, through counsel, now petitions for a writ of habeas corpus, under 28 U.S.C. § 2254, raising five claims for relief.  ECF Doc. 1.  Vicario asserts:

**Ground One**: Vicario's convictions were against the manifest weight of the evidence.  ECF Doc. 1 at 8; ECF Doc. 1-1 at 1, 3–8.

**Ground Two**: The trial court erred when it denied Vicario's motion for a mistrial following Dowell's testimony of his prior bad acts.  ECF Doc. 1 at 8; ECF Doc. 1-1 at 2, 8–12.

**Ground Three**: The prosecutor's statements during rebuttal closing argument constituted prosecutorial misconduct.  ECF Doc. 1 at 8; ECF Doc. 1-1 at 2, 12–15.

**Ground Four**: Trial counsel was ineffective when he failed to object to the admission of Dowell's testimony of her physical abuse and the prosecutor's rebuttal closing argument.  ECF Doc. 1 at 8; ECF Doc. 1-1 at 2, 15–18.

**Ground Five**: Appellate counsel was ineffective when he failed to argue that trial counsel's pretrial investigation into alibi evidence was inadequate.  ECF Doc. 1 at 8; ECF Doc. 1-1 at 2, 18–21.

Respondent, Warden Chae Harris,[1] filed a return of writ.  ECF Doc. 8.  And Vicario filed a traverse.  ECF Doc. 9.

I recommend that Vicario's claims for relief in Grounds Two through Five be DENIED for lack of merit, that his claim for relief in Ground One be DISMISSED as noncognizable, and that his petition for a writ of habeas corpus be DENIED.  I further recommend that Vicario not be granted a certificate of appealability.

# I.  State Court History

## A.  Trial Court

On August 12, 2015, a Cuyahoga County, Ohio, grand jury issued an indictment charging Vicario with: one count of aggravated murder (Count I); one count of murder (Count II); ten counts of felonious assault (Counts III–IV, VI–VII, IX–X, XII–XIII, XV, and XVI); four counts of attempted murder (Counts V, VIII, XI, and XIV); and one count of having a weapons under disability (Count XVII).  ECF Doc. 8-1 at 6–14.  The alleged victims to each charge were:

---

[1] The current warden at Vicario's place of confinement is Chae Harris.  *Rumsfeld v. Padilla*, 542 U.S. 426, 435–36 (2004) (stating that the proper respondent in a habeas action "is the warden of the facility where the [petitioner] is being held").

Matthews (Counts I-IV); Derrett (Counts V-VII); Jackson (Counts VIII-X); Jenkins (Counts XI-XIII); and Carroll (Counts XIV-XVI). *Id.* And all but Count XVII had firearm specifications attached. *Id.* Vicario pleaded not guilty. ECF Doc. 8-1 at 15.

On July 24, 2017, Vicario waived his right to a jury trial and elected to proceed with a bench trial. ECF Doc. 8-1 at 40. Vicario's case went to trial on July 31, 2017. ECF Doc. 8-2 at 53–53. The facts established by the evidence, as determined by the Ohio Court of Appeals, are as follows:

> {¶3} On the evening of May 10, 2015, a group of people were having a party in front of an apartment complex. [Watson] arrived at the apartment complex and started speaking with [Jenkins]. Jenkins's girlfriend, [Jackson,] became upset because she thought Watson and Jenkins were flirting. Before Jackson could approach the couple, Watson left to go to the store with her sister, [Dowell], Vicario's girlfriend. Dowell, Watson, and Vicario arrived at the convenience store about a block away from the apartment complex. Upon their arrival, Dowell and Watson were confronted by Jackson and her friends over the flirtatious behavior, and a fight ensued. Vicario tried to break up the fight, but was unable to do so, and the police were called. Once the police arrived, the fight stopped. The two groups went their separate ways. Tariaha Matthews … , had gone to the store with Jackson, left with Dowell, and went back to Dowell's home.

> {¶4} Vicario was also at Dowell's home, expressed that he was upset with the girls that fought Dowell and Watson, and wanted to exact revenge. Vicario asked [Tariaha] to show him where they lived so that he could fight them for jumping Dowell. They drove to the apartment building where Jackson returned to the party, and [Tariaha] showed Vicario where Jackson lived. Afterwards, [Tariaha] and Vicario returned to Dowell's home. Ten minutes later, Vicario left Dowell's home and went back to the apartment complex, where Vicario fired multiple gun shots at the group partying outside. Michael Matthews ("M. Matthews"), [Tariaha's] father, was killed. [Derrett], Jackson, Jenkins, and … Carroll were shot. At trial, Derrett identified Vicario as the person who shot him.

> {¶5} Terrance Colvin ("Colvin") testified that Vicario confessed to him that he killed [M.] Matthews. Colvin also testified that Vicario abused and intimidated everyone that lived in Dowell's house, including Dowell. Colvin testified that Vicario expressed remorse for killing M. Matthews, stating that he was not supposed to die. Dowell testified that Vicario confessed to her, the morning after the shooting, that he had done something bad. Vicario stated that he shot the people that were fighting.

ECF Doc. 8-1 at 128–30.[2]

During Dowell's direct examination, the state inquired several times into whether Vicario was violent with her.  *See* ECF Doc. 8-2 at 236–38.  The trial court sustained Vicario's objections to Dowell's testimony, stating: "If you're just trying to show that he's a bad guy, that's sustained." *Id.*  The following exchange ensued:

[Prosecutor:]   Dazhanae, are you afraid of Mr. Vicario?

[Dowell:]       Yes.

[Prosecutor:]   Why are you afraid of Mr. Vicario?

[Dowell:]       Because of our past relationship, things he's done to me.

[Prosecutor:]   What things has he done to you?

[Dowell:]       He's put his hands on me multiple times.

[Prosecutor:]   To where you've ended up in the hospital?

[Dowell:]       Yes.

[Prosecutor:]   Is there anything else that makes you afraid of him?

[Dowell:]       No.

[Prosecutor:]   Has he ever stated anything to you that makes you afraid of him?

[Dowell:]       Yes.

[Prosecutor:]   What?

[Dowell:]       That he's killed other people.

[Prosecutor:]   Who?

[Dowell:]       Rob.

ECF Doc. 8-2 at 239.

---

[2] These factual findings are presumed correct unless Vicario rebuts them with clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

Vicario thereupon moved for a mistrial, arguing that the state had elicited testimony of other crimes without prior notice, the other crimes testimony was irrelevant, and the state did so intentionally.  ECF Doc. 8-2 at 240–41.  The state countered that the testimony was relevant to explain why Dowell was not initially forthcoming to police.  ECF Doc. 8-2 at 241–42.  The court denied the motion, noting that the state had not established a foundation for such testimony.  *See* ECF Doc. 8-2 at 241–44.

Dowell subsequently testified that she did not tell police of Vicario's statements until her third police interview in April 2017.  ECF Doc. 8-3 at 7–8.  Dowell testified that she was not initially forthcoming because she was afraid, as Vicario had not been arrested and he had previously hurt her.  ECF Doc. 8-2 at 249–50.  Dowell testified that she later conveyed Vicario's statements because she felt bad for Michael Matthews's daughter, as Dowell's mother had recently passed away.  ECF Doc. 8-3 at 7–8.

In addition to his identification testimony, Derrett testified that the shooter was wearing a black hoodie.  ECF Doc. 8-3 at 83.  Carroll likewise testified that she saw a man in a black hoodie shoot from behind a tree.  ECF Doc. 8-3 at 230.  Shayna Curiale, who saw the shooter from her balcony, testified that he wore dark clothing.  ECF Doc. 8-3 at 138–41.  And Tariaha Matthews ("Tariaha") testified that, when she last saw Vicario, he had a bag with black clothes inside.  ECF Doc. 8-3 at 189.

Detective Joselito Sandoval testified that 13 shell casings were recovered from a vacant lot nearby the apartment complex, which was consistent with where witnesses indicated the shooting began.  ECF Doc. 8-4 at 30–31.  He testified that another shell casing was found when officers executed a search warrant of Vicario's home.  ECF Doc. 8-4 at 41.

Officer Todd Marazzi testified that the firearms section of the police department's forensic unit analyzed the shell casings recovered from the apartment complex and the one recovered while executing the search warrant. ECF Doc. 8-3 at 242, 253–55. The forensic unit determined that each of the shell casings had the same tool mark impressions, such that they were fired by the same unknown firearm. ECF Doc. 8-4 at 15–18.

Several witnesses also testified to their fear of being on the witness stand. Dowell testified that she was afraid to testify because, on her appointed trial date (at which she did not appear), she was "jumped by four females … speaking Spanish" and had to go to the hospital. ECF Doc. 8-3 at 8–9. She was also afraid of Vicario specifically because he had "outside connections." ECF Doc. 8-3 at 22. Lisa Curiale testified that she was terrified because of "stories about how families, you know, come after witnesses." ECF Doc. 8-2 at 127. Jackson testified that she did not want to be on the witness stand. ECF Doc. 8-2 at 79. And when asked whether she recognized any males from the altercation at the convenience store, Dionna Wallace answered: "You really going to ask me that question?" ECF Doc. 8-2 at 113.

Vicario devoted the majority of his closing argument to attacking the credibility of the state's witnesses' testimony. *See* ECF Doc. 8-4 at 88–95. The state argued in rebuttal that it was apparent from the testimony and demeanor of the lay witnesses that they did not want to testify. ECF Doc. 8-4 at 97. The state continued:

> You saw a lot of body language that would suggest they don't want to be there or they don't want to be seen by the defendant, because in their world, in their neighborhood, in their community, taking that stand violates that idiotic code that we hear so much about, that street code that you don't snitch on somebody. You certainly don't take the stand, cast a finger and say, that's the guy that did it, because in their world that means something.
>
> Their body language suggests only that they are uncomfortable being on the stand. It doesn't mean that their testimony shouldn't be relied upon by the Court.

6

In fact, the fact that they are testifying to these crimes and saying this is the guy that told me or this is the guy that I saw at the fight, or as Mr. Derrett said, this is the guy who shot me, I think it even gives their testimony even more credence because they risk a great deal.  The moment they walk out of court, that their life might be in jeopardy.  That's what their life means in their world.

ECF Doc. 8-4 at 97–98.

The trial court found Vicario guilty on all charges.  ECF Doc. 8-4 at 109–10.  After merger of the counts corresponding to each victim, the court sentenced Vicario to life imprisonment with the possibility of parole after 31 years, consisting of: (i) a term of life imprisonment with the possibility of parole after 25 years on Count I; (ii) a term of 11 years each on Counts V, VIII, XI, and XIV, to be served concurrently with the life sentence on Count I; (iii) a term of 3 years on count XVII, to be served concurrently with the life sentence on Count I; and (iv) and two mandatory, consecutive terms of 3 years each on two firearm specifications, to be served prior to the life sentence on Count I.  ECF Doc. 8-1 at 56; ECF Doc. 8-4 at 129–31.

### B.      Direct Appeal

On October 19, 2017, Vicario was granted leave to file a delayed direct appeal.  ECF Doc. 8-1 at 69.  Vicario's merits brief asserted four assignments of error, portions of which are repeated as Grounds One through Four: (i) Vicario's convictions were against the manifest weight of the evidence; (ii) Vicario's due process and fair trial rights were violated when the trial court denied his motion for a mistrial; (iii) the prosecutor engaged in misconduct; and (iv) trial counsel was ineffective when he failed to object to the prosecutor's rebuttal closing argument and highly prejudicial evidence.  ECF Doc. 8-1 at 71–72.

In support of his manifest weight of the evidence assignment of error, Vicario argued that the identification evidence against him was unreliable because Derrett previously identified someone else when shown a photo array and gave a vague description of the shooter.  ECF Doc.

8-1 at 79–80, 84–85.  Vicario argued that no evidence was presented showing that he had braids or dreadlocks, which two witnesses indicated the shooter had.  ECF Doc. 8-1 at 84–85.  And he argued that two witnesses referred to the shooter as "Myron," further raising doubts on the identification testimony.  ECF Doc. 8-1 at 85–86.

Vicario further argued that the ballistics evidence was unreliable because no evidence was presented connecting the shell casings to him specifically and several studies called into question the reliability of "impression evidence."  ECF Doc. 8-1 at 80–83.  And Vicario argued that his alleged admissions that "he messed up and . . . did something bad . . . and went and shot up some people," came from Dowell, who had agreed to testify in exchange for her drug charges being dropped, and Colvin, who had cooperated with police only after being arrested.  ECF Doc. 8-1 at 83–84.

With respect to his motion for a mistrial assignment of error, Vicario argued that his motion included Dowell's testimony of her physical abuse.  ECF Doc. 8-1 at 90.  He argued that the prosecutor's persistent questioning injected improper and prejudicial evidence of Vicario's alleged violent nature and prior criminal conduct.  ECF Doc. 8-1 at 90–91.

In support of his prosecutorial misconduct assignment of error, Vicario argued that the prosecutor's conduct while examining Dowell and during rebuttal closing argument arose to the level of prosecutorial misconduct.  ECF Doc. 8-1 at 91–95.  Vicario argued that no evidence supported the prosecutor's statement that the witnesses feared retribution for their testimony. ECF Doc. 8-1 at 94.

And in support of his ineffective assistance of counsel assignment of error, Vicario argued that trial counsel was ineffective when he only objected to some, and not all, of Dowell's testimony of her alleged physical abuse.  ECF Doc. 8-1 at 96.  He argued that counsel should

have objected to: (i) the prosecutor's question on whether and why Dowell was afraid;

(ii) Dowell's answer that Vicario had put his hands on her multiple times; and (iii) the

prosecutor's follow-up question on whether it got to the point when she ended up in the hospital.

*Id.* Vicario further argued that trial counsel also failed to object to the prosecutor's improper

remarks in rebuttal closing argument.  ECF Doc. 8-1 at 96–97.

The state filed an appellee brief, to which Vicario filed a reply brief.  ECF Doc. 8-1 at

99–125.  On October 18, 2018, the Ohio Court of Appeals overruled Vicario's assignments of

error and affirmed his convictions. ECF Doc. 8-1 at 126–45; *see State v. Vicario*, 2018-Ohio-

4217 (Ohio Ct. App. 2018).  The court first determined that Vicario's convictions were not

against the manifest weight of the evidence, reasoning:

> {¶11} Dowell testified that she initially did not tell police that Vicario
> confessed to the shooting because she was afraid of him.  This testimony was
> elicited by the state in a series of questions regarding Vicario's and Dowell's
> relationship.  The state reasoned that testimony of Vicario's abusive behavior was
> necessary to show why Dowell would react or act as she did.  Dowell then
> testified that Vicario told her the following day that he messed up and "shot those
> people."  [Tariaha] testified that she showed Vicario where to find the people
> from the fight at the convenience store.  Then approximately ten minutes later,
> Vicario left Dowell's home.  … After learning of the shooting and going to the
> scene, [Tariaha] informed the police that "[Vicario] did it."  … The police asked
> how did she know, and she responded, "I showed [Vicario] where he lived and I
> just felt like nobody else had any other motive to go shoot anybody."  * * *

> {¶12} Colvin testified that Vicario admitted to him that he felt bad that
> [Vicario] killed M. Matthews and he was not the intended target.  Vicario
> challenges Colvin's and Dowell's credibility because they made deals with the
> state in exchange for their testimony.  However, the trial court was aware of the
> deals that the state offered Colvin and Dowell in exchange for their testimony.
> Additionally, defense counsel extensively cross-examined Colvin and Dowell
> regarding their deals.

> * * *

> {¶13} Finally, as the detectives were investigating the homicide of M.
> Matthews, a shell casing found in Watson's home where Vicario was occasionally
> living matched the casings located at the crime scene.  The ballistics examiner

> determined that the casing was fired from the same firearm.  Thereafter, there was a peer review from two other ballistic examiners, each concluding that the 13-shell casings found at the crime scene were fired from the same unrecovered gun that fired the shell casing found in Watson's home.  The three examiners were in 100 percent agreement.  This evidence including the testimony of the witnesses were judged to be credible by the trier of fact.

ECF Doc. 8-1 at 133–34 (alterations in original; internal citations omitted).

In rejecting Dowell's motion for mistrial assignment of error, the court determined that any error in the admission of Dowell's testimony was harmless because it appeared that the trial court only considered relevant, material, and competent evidence in reaching its verdict.  ECF Doc. 8-1 at 138–39.  With respect to Dowell's prosecutorial misconduct assignment of error, the Ohio Court of Appeals stated that, because Dowell did not object, he had waived all but plain error review.  ECF Doc. 8-1 at 140–41.  The court determined that Vicario was not prejudiced or deprived of a fair trial because, "[o]utside of the testimony or the closing arguments, there is still an overwhelming amount of evidence that sustains the trial court's finding of Vicario's guilt." ECF Doc. 8-1 at 141–42.  And because the court already determined that Vicario suffered no prejudice on account of Dowell's testimony or the prosecutor's closing argument, the court overruled his ineffective assistance of trial counsel assignment of error.  ECF Doc. 8-1 at 142–44.

On November 29, 2018, Vicario appealed to the Ohio Supreme Court.  ECF Doc. 8-1 at 146–47.  His memorandum in support of jurisdiction re-asserted his motion for mistrial, prosecutorial misconduct, and ineffective assistance of trial counsel assignments of error as propositions of law.  *See* ECF Doc. 8-1 at 149–64.  On February 20, 2019, the Ohio Supreme Court declined to exercise jurisdiction.  ECF Doc. 8-1 at 186.

### C.    Post-Conviction Relief

On November 26, 2018, Vicario filed a pro se petition to vacate his convictions, under

Ohio Rev. Code § 2953.21.  ECF Doc. 8-1 at 187.  Vicario raised one claim of ineffective

assistance of counsel based on trial counsel's failure to investigate alibi witnesses Laura Burke

and Angela Jones, which were identified by a private investigator retained by Vicario to assist in

his defense.  ECF Doc. 8-1 at 191–97.  Vicario argued that Burke would have testified that he

was with her at the time of the offense, and that Jones would have confirmed Vicario was

nowhere near the scene of the shooting at the time it occurred.  ECF Doc. 8-1 at 195–96.  He also

argued that trial counsel failed to investigate his case generally.  ECF Doc. 8-1 at 197–98.

Vicario attached to his petition two emails from Empire Investigations, Inc.  According to

the first email, Burke indicated on October 11, 2016 that: (i) she was stirred from sleep around

9:30 p.m. on May 10, 2015 by her daughter's scream that a shooting was happening, at which

time Vicario was in her house; and (ii) Colvin came over three days later and admitted to Burke

that he lied and set Vicario up.  ECF Doc. 8-1 at 202.  The email further indicated that, according

to Dowell, Colvin came by Burke's house a week after the shooting and admitted to having set

Vicario up.  *Id.*  The second email concerned an interview of Carroll.  ECF Doc. 8-1 at 204.

Vicario also attached a letter he sent to trial counsel with a list of people he wanted

subpoenaed, which included Burke and Jones.  ECF Doc. 8-1 at 206.  And he attached an

affidavit attesting to the facts asserted in his petition.  ECF Doc. 8-1 at 208–09.

On December 13, 2018, the trial court issued a journal entry summarily denying

Vicario's petition.  ECF Doc. 8-1 at 210.  On February 25, 2019, the court followed up with

findings of facts and conclusions of law.  ECF Doc. 8-1 at 211.  The court found that Vicario's

ineffective assistance of trial counsel claim was barred by the doctrine of res judicata because:

(i) he was aware of counsel's failure to call Burke and had possession of the evidence supporting his claim at the time of trial; and (ii) he failed to provide any supporting documentation with respect to Jones. ECF Doc. 8-1 at 216–17.

The trial court alternatively determined that Vicario failed to establish that trial counsel performed deficiently. The court found that there was a reasonable basis for trial counsel to exclude Burke as a witness: the timeline established at trial was that the shooting occurred between 10:30 p.m. and 11:40 p.m., making Vicario's presence at Burke's house around 9:30 p.m. not exculpatory. ECF Doc. 8-1 at 219. And the court found that the lack of supporting documentation with respect to Jones failed to establish deficient performance. Id. The court also determined that Vicario failed to establish prejudice because the evidence showing that Vicario was the shooter was overwhelming. ECF Doc. 8-1 at 220–21.

On April 24, 2019, the Vicario filed a motion for leave to file an untimely appeal. ECF Doc. 8-1 at 241. He argued that he did not receive the trial court's findings of fact and conclusions of law until after the time within which to file an appeal. ECF Doc. 8-1 at 243. He further argued that he had only recently obtained access to law library assistance and legal materials with which to prepare a proper notice of appeal. Id.

On May 6, 2019, the Ohio Court of Appeals denied Vicario's motion because Ohio App. R. 5 did not provide for delayed appeals that were civil in nature, including an appeal from the denial of a petition for postconviction relief. ECF Doc. 8-1 at 251. Vicario did not further appeal to the Ohio Supreme Court. See ECF Doc. 8-1 at 313.

### D.   Ohio App. R. 26(B) Application Reopen

On January 16, 2019, Vicario filed a pro se application to reopen his direct appeal, under Ohio App. R. 26(B). ECF Doc. 8-1 at 252. Vicario sought to reopen his direct appeal to assert

two issues that were not raised due to ineffective assistance of appellate counsel: (i) trial counsel was ineffective for, among other things, not investigating and calling potential alibi witnesses; and (ii) there was insufficient evidence to support his convictions. ECF Doc. 8-1 at 255–64. Vicario's proposed ineffective assistance of trial counsel claim did not list any proposed witnesses. Vicario argued instead that counsel failed to investigate and subpoena witnesses identified in Vicario's list of potential alibi witnesses. ECF Doc. 8-1 at 260–61. Vicario's proposed sufficiency of the evidence claim argued that the evidence was legally insufficient because the identification testimony was unreliable. ECF Doc. 8-1 at 262–63.

The state filed a memorandum in opposition. ECF Doc. 8-1 at 268–76. On March 5, 2019, the Ohio Court of Appeals denied Vicario's application to reopen. ECF Doc. 8-1 at 277–85; *State v. Vicario*, 2019-Ohio-784 (Ohio Ct. App. 2019). In rejecting Vicario's proposed ineffective assistance of trial counsel claim, the court reasoned:

> {¶11} Vicario further argues that counsel failed to adequately prepare for trial and investigate the case. However, Vicario points to conversations and items outside of the record on appeal in support of this argument. If some evidence exists outside the record to support this contention, that is an argument that could form the basis of a postconviction relief petition but not an application for reopening. … Vicario's claim that appellate counsel was ineffective for failing to argue that trial counsel was ineffective in the manner described in the application is not grounds for reopening his appeal because it is unsupported in, or even contrary to, the record.

ECF Doc. 8-1 at 282 (internal citation omitted).

And in rejecting Vicario's proposed sufficiency of the evidence claim, the court reasoned:

> {¶15} Within Vicario's argument in support of this proposition, he does not cite to any lack of evidence going to any element of an offense, but merely argues that the evidence adduced against him should not be believed for various reasons. This is a manifest weight argument, which appellate counsel made to this court.

{¶16} For instance, Vicario claims the evidence against him is "totally insufficient as it is conflicting and highly prejudiced * * *." … He goes on to assert that the eyewitness identifications of him as the shooter were unreliable or could not be believed for various reasons including that two of the witnesses made deals with the state in exchange for their testimony.  However, appellate counsel made the same arguments to this court within the manifest weight assignment of error.  * * *

{¶17} Even if counsel did not advance a similar argument that Vicario now makes in his proposed assignment of error, a sufficiency analysis is necessarily included in an analysis of whether the manifest weight of the evidence supported conviction[.]

ECF Doc. 8-1 at 284 (internal citations omitted).

On April 8, 2019, Vicario appealed to the Ohio Supreme Court.  ECF Doc. 8-1 at 286. His memorandum in support of jurisdiction re-asserted the proposed assignments of error he raised in his Rule 26(B) application as propositions of law.  ECF Doc. 8-1 at 288–301.  On June 26, 2019, the Ohio Supreme Court declined to exercise supplemental jurisdiction.  ECF Doc. 8-1 at 312.

## II.    Law and Analysis

I will address Vicario's claims for relief out of order, starting with his Ground Two claim of trial court error.  I will then address Vicario's Ground Three prosecutorial misconduct claim, followed by his Ground Four and Ground Five claims ineffective assistance of counsel.  I will address his Ground One manifest weight of the evidence claim last.

### A.    Ground Two

Vicario's Ground Two claim argues that his due process rights were violated by the denial of his motion for a mistrial because Dowell's testimony of her alleged physical abuse "necessarily tainted the trial judge" against him.  ECF Doc. 1-1 at 8–12; ECF Doc. 9 at 3–4. Warden Harris responds that Vicario's Ground Two claim is noncognizable to the extent he contests the admissibility of Dowell's testimony and meritless because the Ohio Court of

14

Appeals reasonably determined the testimony did not render his trial fundamentally unfair and there is no clearly established federal law on the admission of other acts evidence.  ECF Doc. 8 at 17–23.

Because the Ohio Court of Appeals addressed Vicario's Ground Two claim on the merits, a writ of habeas corpus can issue only if that decision: (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court; or (2) was based on an unreasonable determination of the facts in light of the record before the state court.  28 U.S.C. § 2254(d).  So long as "fairminded jurists" could disagree on whether the state court correctly decided the matter, we may not grant relief.  *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks omitted).

"'There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence.'" *Young v. Hill*, No. 22-3414, 2022 U.S. App. LEXIS 28410, at *11 (6th Cir. Oct. 12, 2022) (unreported) (quoting *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003)).  Federal habeas relief is, therefore, only available if the admission of the evidence "so perniciously affect[ed] the prosecution of a criminal case as to deny the [petitioner] the fundamental right to a fair trial." *Kelley v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994).  The error must have had a "substantial and injurious effect or influence in determining the [court's] verdict.  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (internal quotation marks omitted).

Vicario has not established that the Ohio Court of Appeals' rejection of his Ground Two claim was contrary to, or involved an unreasonable application of, clearly established federal law.  28 U.S.C. § 2254(d).  The Ohio Court of Appeals determined that any error in the admission of Dowell's testimony was harmless because he failed to overcome the presumption

that trial judges consider only relevant, material, and competent evidence in reaching their verdicts.  ECF Doc. 8-1 at 139.  Fair-minded jurists could disagree on the correctness of that determination.  *See Harrington*, 562 U.S. at 101.  Prior to the testimony that gave rise to the motion for a mistrial, the trial court had already sustained objections on the basis of propensity.  ECF Doc. 8-2 at 237–38.  The court expressed skepticism at the relevance of Vicario's past conduct to the merits of the case.  ECF Doc. 8-2 at 241–43.  And the court stated that Vicario's past conduct would only be relevant to explain why Dowell was afraid to mention Vicario's admission to police.  ECF Doc. 8-2 at 242–43.  The record, therefore, supports the Ohio Court of Appeals' conclusion that the trial judge either ignored Dowell's testimony of her physical abuse or limited his consideration of it for a relevant purpose and did not assign it undue weight in reaching his verdict.  *See Harris v. Rivera*, 454 U.S. 339, 346 (1981) ("In bench trials, judges routinely hear inadmissible evidence that they are presumed to ignore when making decisions."); *see also Brown v. Pitcher*, 19 F. App'x 154, 157 (6th Cir. 2001).  Thus, the state court's decision was not beyond any possibility of fair-minded disagreement.  *See Harrington*, 562 U.S. at 102–03.

I recommend that Vicario's Ground Two claim be DENIED for lack of merit.

## B.    Ground Three

Vicario's Ground Three claim argues that his due process rights were violated when the prosecutor suggested during rebuttal closing argument that the witnesses had been intimidated or could face retaliation for their testimony against him.  ECF Doc. 1-1 at 14–15.  Warden Harris responds that this claim is procedurally defaulted because the Ohio Court of Appeals enforced the contemporaneous objection rule to forego review of the claim.  ECF Doc. 8 at 23–26.  Alternatively, the warden argues that the claim is meritless.  ECF Doc. 8 at 25–29.

1. **Procedural Default**

The procedural default doctrine precludes federal review if the petitioner has failed to follow the state's procedural requirements for presenting his claim in state court.  *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991).  But when the issue of procedural default raises more questions than the merits, we may proceed straight to the merits.  *See, e.g.*, *Watkins v. Lafler*, 517 F. App'x 488, 498 (6th Cir. 2013); *Babick v. Berghuis*, 620 F.3d 571, 576 (6th Cir. 2010); *Hudson v. Jones*, 351 F.3d 212, 215–16 (6th Cir. 2003).

Although Vicario's Ground Three claim implicates the procedural default doctrine, it is simpler to resolve the claim on the merits.  Vicario could potentially overcome procedural default of his Ground Two claim through an ineffective assistance of trial counsel claim, such as Vicario's Ground Four claim.  *Martinez v. Ryan*, 556 U.S. 1, 9, 14, 17 (2012); *see also White v. Warden, Ross Corr. Inst.*, 940 F.3d 270, 276–78 (6th Cir. 2019).  An analysis into the merits of Vicario's ineffective assistance of trial counsel claim would necessarily overlap with the underlying merits analysis of Vicario's Ground Two claim.  Rather than have duplicate analyses, I will address – and I recommend the Court address – Vicario's Ground Two claim on the merits.  *See Caraballo v. Bracy*, No. 1:16 CV 3024, 2018 U.S. Dist. LEXIS 128019, at *10 (N.D. Ohio July 12, 2018), *report and recommendation adopted*, 2018 U.S. Dist. LEXIS 128009 (N.D. Ohio July 30, 2019).

2. **Merits**

The Ohio Court of Appeals' rejection of Vicario's Ground Three claim on plain error review is subject to deference under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *See Stewart v. Trierweiler*, 867 F.3d 633, 638 (6th Cir. 2017).  Claims of prosecutorial misconduct are governed by *Darden v. Wainwright*, under which a petitioner must show that the misconduct "so infected the trial with unfairness as to make the resulting

conviction a denial of due process." 477 U.S. 168, 181 (1986) (internal quotation marks mitted). This standard "is a very general one, leaving courts more leeway in reaching outcomes in case-by-case determinations." *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (internal citation and quotation marks omitted).

Vicario has not shown that the Ohio Court of Appeals' denial of his Ground Three claim was contrary to, or an unreasonable application of *Darden*. 28 U.S.C. § 2254(d)(1). The Ohio Court of Appeals concluded that Vicario was not prejudiced or deprived of a fair trial by the prosecutor's allegedly improper remarks because there was overwhelming evidence of his guilt. ECF Doc. 8-1 at 141–42. Although the court did not elaborate on its reasoning, Vicario has not established that there was no reasonable basis for that conclusion. *See Harrington*, 562 U.S. at 98.

The evidence the Ohio Court of Appeals discussed in its manifest weight of the evidence analysis, as well as other evidence presented at trial, was evidence from which the court could reasonably conclude that the evidence against Vicario was overwhelming. Such evidence includes:

(i)    Tariaha's testimony that on May 10, 2015: (a) Tariaha accompanied Jackson to the convenience store (ECF Doc. 8-3 at 160–61); (b) Tariaha witnessed Jackson confront and fight with Watson and Dowell (ECF Doc. 8-3 at 161–62); (c) Vicario was present at the scene and was later irate about the fight (ECF Doc. 8-3 at 162–64; (d) Tariaha identified at Vicario's request where Jackson and Jenkins lived (ECF Doc. 8-3 at 166, 168, 185); and (e) Tariaha heard Vicario say "that he wanted to get even with them" (ECF Doc. 8-3 at 185).

(ii)   Dowell's and Wallace's corroborative testimony that on May 10, 2015 there was a fight at the convenience store involving Jackson, and at which Vicario was present (ECF Doc. 8-2 at 104, 113, 244–47).

(iii)  Derrett's testimony identifying Vicario as the shooter (ECF Doc. 8-3 at 84).

(iv)   Derrett's, Carroll's, and Shayna Curiale's testimony that they saw the shooter wearing a black hoodie and dark clothes (ECF Doc. 8-3 at 83, 138–41, 230), and

Tariaha's testimony that she saw Vicario with a bag of black clothing inside (ECF Doc. 8-3 at 189).

(v)     Officer William Salupo's testimony that he executed a search warrant on a house at which Vicario resided and uncovered a shell casing (ECF Doc. 8-2 at 216).

(vi)    Officer Marazzi's testimony that the shell casing recovered during the execution of the search warrant was fired by the same weapon as the 13 shell casings recovered from the scene of the shooting (ECF Doc. 8-4 at 15–18).

(vii)   Dowell's testimony that on May 11, 2015 Vicario admitted to her that he "shot up" the people from the night before (ECF Doc. 8-2 at 248–49).

(viii)  And Colvin's testimony that in July 2015 Vicario admitted to having unintentionally killed Matthews (ECF Doc. 8-3 at 98).

As the Ohio Court of Appeals also observed, bench trials give rise to a presumption that the trial judge considered only relevant, material, and competence evidence. ECF Doc. 8-1 at 141. "[F]ederal courts similarly presume that a judge, as the trier of fact, can readily identify credible evidence, … give proper weight to the evidence, … and understand what law is relevant to his or her deliberations." *Hill v. Shoop*, 11 F.4th 373, 433 (6th Cir. 2021) (internal citations omitted); *see also Harris*, 454 U.S. at 346. And fair-minded jurists could disagree on the correctness of the state court's finding that Vicario did not rebut that presumption. *See Harrington*, 562 U.S. at 101. Therefore, the Ohio Court of Appeals' rejection of Vicario's Ground Three claim was not beyond any possibility of fair-minded disagreement. *Harrington*, 562 U.S. at 102–03.

I recommend that Vicario's Ground Three claim be DENIED for lack of merit.

**C.     Ground Four**

Vicario's Ground Four claim argues that trial counsel was ineffective when he failed to object to Dowell's testimony of her having been physically abused by Vicario and the prosecutor's rebuttal closing argument. ECF Doc. 1-1 at 15–17. Warden Harris responds that

19

the claim is meritless because the Ohio Court of Appeals reasonably determined that Vicario suffered no prejudice.  ECF Doc. 8 at 29–30.

Claims of ineffective assistance of counsel are governed by *Strickland v. Washington*, under which the petitioner must show that (i) trial counsel behaved unreasonably; and (ii) that unreasonable performance prejudiced the defense.  466 U.S. 668, 687 (1984).

Vicario has not shown that the Ohio Court of Appeals' rejection of his Ground Four claim was contrary to, or an unreasonable application of, *Strickland*.  28 U.S.C. § 2254(d)(1). The court explicitly cited and applied the *Strickland* deficiency and prejudice standard.  ECF Doc. 8-1 at 142.  As discussed above, fair-minded jurists could disagree on the correctness of the court's determination that Vicario suffered no prejudice on account of Dowell's testimony or the prosecutor's improper remarks during rebuttal closing argument.  Because the foundation of Vicario's ineffective assistance of trial claims lacks merit, fair-minded jurists necessarily could also disagree on the correctness of the Ohio Court of Appeals' rejection of Vicario's related ineffective assistance of trial claim.  *See Harrington*, 562 U.S. at 101.

I recommend that Vicario's Ground Four claim be DENIED for lack of merit.

### D.    Ground Five

Vicario's Ground Five claim argues that appellate counsel was ineffective for not raising an ineffective assistance of trial counsel assignment of error based on trial counsel's failure to investigate Burke and Jones as potential alibi witnesses.  ECF Doc. 1-1 at 18–21.  Warden Harris responds that the claim is meritless because the Ohio Court of Appeals reasonably determined that the issue could not have been raised on direct appeal and the trial court reasonably rejected the underlying claim of ineffective assistance of trial counsel.  ECF Doc. 8 at 31–32.

Vicario has not shown that the Ohio Court of Appeals' rejection of his Ground Five claim was contrary to, an unreasonable application of, *Strickland*. 28 U.S.C. § 2254(d)(1). The court explicitly cited and applied the *Strickland* deficiency and prejudice standard. ECF Doc. 8-1 at 280–81. And fair-minded jurists could disagree on the correctness of the court's determination that it would not have been proper to raise Vicario's proposed assignment of error on direct appeal. *See Harrington*, 562 U.S. at 101. The court found that Vicario's Ground Five claim was based on material outside of the record, a factual finding he has not rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); ECF Doc. 8-1 at 282. Under Ohio law, claims of ineffective assistance of trial counsel are not appropriate on direct appeal when they rely on evidence outside of the record to establish prejudice. *State v. Spaulding*, 151 Ohio St.3d 378, 396 (Ohio 2016). Thus, the Ohio Court of Appeals' denial of Vicario's Ground Five claim was not beyond any possibility of fair-minded disagreement. *See Harrington*, 562 U.S. at 102–03.

I recommend that Vicario's Ground Five claim be DENIED for lack of merit.

### E.      Ground One

Vicario's Ground One claim argues that his convictions were against the manifest weight of the evidence because: (i) Dowell's and Colvin's testimony was "inherently incredible," as it lacked corroboration; (ii) Tariaha did not see him commit the offense; (iii) Derrett gave unreliable identification testimony, including that the shooter had dreadlocks and shot the gun with his right hand (whereas Vicario had no dread locks and was left-handed); and (iv) the ballistics report was based on questionable methodology. ECF Doc. 1-1 at 6–8.

Warden Harris responds that that Vicario's Ground One claim is noncognizable. ECF Doc. 8 at 16. To the extent that it is not, the warden argues that the claim is procedurally

21

defaulted because he did not raise a manifest weight of the evidence argument in his Ohio Supreme Court memorandum in support of jurisdiction.  ECF Doc. 8 at 17.

In his traverse, Vicario argues that his case is distinguishable from the case cited by Warden Harris for the proposition that a manifest weight of the evidence claim is noncognizable in a federal habeas case.  ECF Doc. 9 at 1–2.  He argues that his Ground One claim is not procedurally defaulted because he has argued that he is actually innocent.  ECF Doc. 9 at 2.

### 1.  Cognizability

The nature of Vicario's Ground One claim is unclear.  The headings Vicario uses to articulate the essence of the claim assert that "the manifest weight of the evidence did not support the convictions."  ECF Doc. 1 at 8; ECF Doc. 1-1 at 1, 3.  And Vicario's supporting arguments challenge the weight the trial judge assigned to Colvin's, Dowell's, Derrett's, Tariaha's, and Officer Marazzi's testimony, as opposed to asserting that the evidence was insufficient to establish any element of the offenses charged.  At the same time, however, Vicario states (albeit in perfunctory fashion) that the evidence against him was insufficient and cites Supreme Court precedent requiring that a conviction be supported by proof beyond a reasonable doubt.  ECF Doc. 1-1 at 5 (citing *In re Winship*, 397 U.S. 358 (1970)); *see also id.* at 7.

Both readings face obstacles Vicario cannot surmount.  If read as a manifest weight of the evidence claim, it is not cognizable.  To obtain a writ of habeas corpus, Vicario must prove that he is "in custody in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).  "A manifest-weight-of-the-evidence claim in Ohio is a state law claim that is similar to but ultimately different from a federal constitutional claim that the evidence was insufficient to support a conviction."  *Schwarzman v. Gray*, No. 17-3859, 2018 U.S. App. LEXIS 27193, at *8 (6th Cir. Jan. 30, 2018) (unreported); *see also State v. Thompkins*, 78 Ohio St.3d

380, 387 (Ohio 1997) (explaining the difference between the two).  "[F]ederal habeas corpus relief does not lie for errors of state law."  *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (internal quotation marks omitted).

Federal courts often reconstrue manifest weight of the evidence claims as asserting a sufficiency of the evidence claim, when the petitioner is proceeding pro se.  *Thompson v. Harris*, No. 4:18cv2103, 2020 U.S. Dist. LEXIS 181863, at *25 (N.D. Ohio Sept. 30, 2020) (collecting cases).  But Vicario is proceeding in this matter through counsel.  His petition and traverse are, therefore, not afforded the degree of liberal construction that would allow this court to recast his Ground One claim as asserting a sufficiency of the evidence claim.  *Cf. Franklin v. Rose*, 765 F.2d 82, 84–85 (6th Cir. 1985).  This is especially so since Vicario has not articulated in what way the evidence was insufficient, either regarding any required element of any count on which he was convicted or on which count his argument applies to.  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997); *see generally* ECF Doc. 1; ECF Doc. 1-1; ECF Doc. 9.

I recommend that Vicario's Ground One claim be DISMISSED as noncognizable.

## 2.  Procedural Default

Even if Vicario's Ground One claim were read as asserting a sufficiency of the evidence claim, it would be procedurally defaulted.

Before coming to federal court, a state habeas petitioner must give the state courts a "*fair*" opportunity to act on his claims.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) (emphasis in original).  For a claim to have been fairly presented, the factual and legal basis of the claim asserted by the petitioner must have raised at every available stage of state review.  *Wagner v. Smith*, 581 F.3d 410, 418 (6th Cir. 2009); *McMeans v. Brigano*, 228 F.3d 674, 681

(6th Cir. 2000).  If the petitioner hasn't done so and has no legal mechanism by which to do so now, the claim he failed to present is procedurally defaulted, which means this court cannot act on the claim either.  *Williams v. Anderson*, 460 F.3d 789, 809 (6th Cir. 2006).

Procedural default can be excused and will not preclude consideration of a claim on federal habeas review, however, if the petitioner can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law;" or (2) "failure to consider the claim will result in a fundamental miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim – supported by new reliable evidence not presented at trial – would establish that the petitioner was "actually innocent" of the offense.  *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

Vicario's Ground One claim is procedurally defaulted because he did not fairly present it at every stage on direct review.  *Wagner*, 581 F.3d at 418.  Vicario raised his Ground One claim in his Ohio Court of Appeals brief.  ECF Doc. 8-1 at 77–86; *see Nash v. Eberlin*, 258 F. App'x 761, 764–65 (6th Cir. 2007) (holding that a sufficiency of the evidence claim may be fairly presented on direct appeal as a manifest weight of the evidence claim because a decision on the issue of weight "necessarily implies a finding that there was sufficient evidence").  But he did not thereafter raise the issue in his memorandum in support jurisdiction to the Ohio Supreme Court.  *See* ECF Doc. 8-1 at 149–64.  Any future attempt to raise a sufficiency of the evidence claim in the Ohio Supreme Court would be barred by Ohio's res judicata doctrine.  And although Vicario did raise the issue in the Ohio Supreme Court when he appealed the denial of his Rule 26(B) application to reopen, the issue was presented in terms of ineffective assistance of appellate counsel.  *See* ECF Doc. 8-1 at 298–301; *Hodge v. Jordan*, 12 F.4th 640, 645 (6th Cir.

2021) ("[R]aising an ineffective assistance claim does not preserve the merits of the underlying substantive claim.").

Vicario cannot overcome the procedural default of his Ground One claim.  Vicario has not attempted to assert cause to excuse the default – that some external factor impeded his ability to raise his Ground One claim to the Ohio Supreme Court on direct appeal.  *See Murray v. Carrier*, 477 U.S. 478, 487 (1986) ("[T]he existence of cause for procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule."); *see generally* ECF Doc. 1; ECF Doc. 1-1; ECF Doc. 9.  His inability to establish cause makes it unnecessary to consider whether he has shown prejudice.  *Matthews v. Ishee*, 486 F.3d 883, 891 (6th Cir. 2007).  And although Vicario argues in his traverse the argued in his petition that "he is innocent," a review of his petition belies that contention.  ECF Doc. 9 at 2.  Moreover, he has not presented any evidence with which to back up a claim of actual innocence.  *Schlup*, 513 U.S. at 324.

Even if cognizable, Vicario's Ground One claim would be subject to dismissal under the procedural default doctrine.

### 3.    Merits

Putting aside Vicario's cognizability and procedural default problems, Vicario's Ground One claim would also fail on the merits.

In reviewing a claim of lack of sufficient evidence, federal courts apply the *Jackson v. Virginia* standard: "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. 307, 319 (1979) (emphasis in original).  This standard "must be applied with explicit reference to the substantive elements of the criminal offense as

defined by state law." *Id.* at 324 n.16.  The reviewing court may "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the [trier of fact]." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  And when a state court has addressed the issue of sufficiency on the merits, the double layer of deference required of *Jackson* and AEDPA creates a "nearly insurmountable hurdle" for the petitioner.  *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2011) (internal quotation marks omitted).

The Ohio Court of Appeals implicitly rejected Vicario's Ground One evidence insufficiency claim when it ruled that his conviction was not against the manifest weight of the evidence.  ECF Doc. 8-1 at 132–35, 284–85.  *see also Nash*, 258 F. App'x at 765.  Vicario has not shown that the state appellate court's conclusion was contrary to, or an unreasonable application of, *Jackson*.  28 U.S.C. § 2254(d)(1).  As noted above, Vicario has not argued in what way the evidence was insufficient, either regarding any required element of any count on which he was convicted or on which count his argument applies to.  *See generally* ECF Doc. 1; ECF Doc. 1-1; ECF Doc. 9.  Moreover, as discussed above in connection with Vicario's Ground Three claim, the evidence the Ohio Court of Appeals discussed in its manifest weight analysis and other evidence presented at trial was evidence from which the court could reasonably conclude that the evidence against Vicario was overwhelming.  *See Harrington*, 562 U.S. at 101.  Fair-minded jurists necessarily could also disagree on the correctness of the court's determination that there was sufficient evidence from which a rational trier of fact could conclude that Vicario was guilty of the offenses for which he was charged.  *Id.*  Therefore, the Ohio Court of Appeals' denial of Vicario's Ground One claim was not beyond any possibility of fair-minded disagreement.  *Id.* at 102–03; *see also Nash*, 258 F. App'x at 765.

Thus, should the Court prefer to do so, Vicario's Ground One claim could be denied as meritless.

## III.  Certificate of Appealability[3]

Under 28 U.S.C. § 2253(c)(1)(A), this court will grant a certificate of appealability ("COA") for an issue raised in a §2254 habeas petition only if the petitioner has made a substantial showing of the denial of a federal constitutional right.  *Cunningham v. Shoop*, 817 F. App'x 223, 224 (6th Cir. 2020).  A petitioner satisfies this standard by demonstrating that reasonable jurists "could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (internal quotation marks omitted); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  When a claim is denied on procedural grounds, the petitioner must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack*, 529 U.S. at 484.

If the Court accepts my recommendations, Vicario will not be able to show that the Court's rulings on his claims are debatable among jurists of reason.  Vicario's claims for relief in Grounds Two through Five are meritless.  And his Ground One claim is noncognizable, procedurally defaulted, and meritless.  Because jurists of reason would not find debatable that relief is not available on any of the Vicario's claims, I recommend that no COA issue in this case.

---

[3] In light of the requirement that the Court either grant or deny a certificate of appealability at the time of its adverse order, a recommendation regarding the certificate of appealability is included.  Rule 11(a), 28 U.S.C. foll. § 2254.

## IV.    Recommendation

Because Vicario's claims are noncognizable, procedurally defaulted, and/or meritless, I recommend that Vicario's claims be DISMISSED in part and DENIED in part and that his petition for a writ of habeas corpus be DENIED.  I further recommend that Vicario not be granted a COA.

Dated: November 28, 2022

Thomas M. Parker
United States Magistrate Judge

---

### Objections, Review, and Appeal

Within 14 days after being served with a copy of this report & recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the magistrate judge.  Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C.§ 636(b)(1); Local Rule 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

* * *

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation.  *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019).  Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).  Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 301875, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*).  The failure to assert specific objections may in rare cases be excused in the interest of justice.  *See United States v. Wandahsega*, 924 F.3d 868, 878–79 (6th Cir. 2019).